UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-80677-DMM/BER

MARIA LEE,

Plaintiff,

v.

KILOLO KIJAKAZI
Acting Commissioner for Social Security,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 19, 20)**

This matter is before the Court on the parties' cross motions for summary judgment filed by Maria Lee ("Plaintiff" or "Ms. Lee") (ECF NO. 19) and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") (ECF No. 20). I have reviewed the Parties' Motions for Summary Judgment as well as the Commissioner's Response (ECF No. 21) and Plaintiff's Reply (ECF No. 23).[1] Under the limited standard of review that governs this case, I find that the motions are ripe for disposition. For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 19) should be **GRANTED**, Defendant's

[1] The Commissioner's "Response to Plaintiff's Motion for Summary Judgment and Supporting Brief" found at ECF No. 21 is identical to its Motion for Summary Judgment found at ECF No. 20.

Motion for Summary Judgment (ECF No. 20) should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED.**

## BACKGROUND

On August 4, 2018, Ms. Lee filed an application for a period of disability and Disability Insurance Benefits ("DIB") alleging a period of disability beginning on April 29, 2015.[2] R. 16, 245.[3]

The record contains the following facts adduced largely from Ms. Lee's testimony at the hearing and the testimony of a vocational expert ("VE"). Ms. Lee was 54 years old at the time of her alleged disability onset. R. 43. She completed high school, one year of college, and vocational trade school. R. 44, 246. She has past work experience as a school bus monitor, a reception clerk, a hair stylist, and a manager. R. 57–58. Ms. Lee alleged the following physical conditions limiting her ability to work: degenerative arthritis in her legs and knee pain. R. 245. Although her original disability report lists only these two conditions as limiting her ability to work, Ms. Lee testified in the hearing before the administrative law judge (the "ALJ") that she also suffers from impairment to her left hip, anxiety, and depression. R. 51, 52. Ms. Lee reported that she does not take any medications or have any current treatment for the anxiety and depression. R. 51.

---

[2] By motion at the hearing before the ALJ, Ms. Lee's counsel requested to amend the onset date to November 8, 2015, and the ALJ accepted the motion. R. 43–44.

[3] Citations preceded by "R." are to the administrative record filed at ECF No. 17.

Ms. Lee testified that she cannot stand for more than thirty minutes without needing to sit down and cannot sit for more than an hour before needing to stand up. R. 53. She reported that she cannot lift more than twenty pounds and will often use a cane if she has to walk more than a block. R. 53–55. When testifying about limitations affecting her ability to work, Ms. Lee described her back, knee, and leg pain. R. 48–49, 56–57. Ms. Lee also testified that since the alleged onset date of November 8, 2015, she has held jobs as a bus monitor/class assistant, a hair stylist, and a receptionist. R. 46–48.

At the hearing, the ALJ also heard testimony from Vocation Expert James Newton. The VE described Ms. Lee's past relevant work positions as a school bus monitor as light and unskilled, as a reception clerk as sedentary and semi-skilled, as a hair stylist as light and skilled, and as a manager as light and skilled. R. 56–57. The ALJ then asked the VE two hypotheticals. In the first hypothetical, the ALJ asked the VE whether an individual Ms. Lee's age, with the same education and work experience, could perform Ms. Lee's past work. R. 58. Per the ALJ, the hypothetical claimant could perform light exertion work, occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl, occasionally be assumed to extreme cold and vibration, and never be exposed to unprotected heights. *Id*. The VE responded that the hypothetical claimant could perform all of Ms. Lee's past work with the exception of school bus monitor. *Id*.

In the second hypothetical posed to the VE, the ALJ asked him to assume an individual with the same functional abilities as the first hypothetical, "except that

due to pain and the need for additional work breaks, the individual would be off-task 15 percent of the workday." When asked whether this hypothetical claimant could perform Ms. Lee's past work, the VE testified that she would not be able to do so. *Id*.

Based on the testimony and Ms. Lee's medical records, on August 5, 2020, the ALJ issued an unfavorable decision finding that Ms. Lee was not disabled under sections 216(i) and 223(d) of the Social Security Act. R. 28. Ms. Lee appealed the ALJ's decision to the Appeals Council and on February 10, 2021, the Appeals Council denied her request for review, rendering the ALJ's decision the "final decision." R. 1–6. Ms. Lee filed this action in the District Court, requesting judicial review of the ALJ's decision. ECF No. 1. She seeks reversal of the ALJ's decision that she is not disabled on the grounds that (1) the ALJ failed to explain why he did not consider limitations he found credible at step two of the sequential evaluation process in his determination of Ms. Lee's residual functional capacity, and (2) Ms. Lee is entitled to a legitimate valid hearing before an ALJ who has lawful authority to hear and decide her claim based on valid legal authority. ECF No. 19-1 at 2, 8.

**STANDARD OF REVIEW**

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996). *See also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### I. The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*

In evaluating alleged mental impairments specifically, the ALJ must use the "'special technique' dictated by the [Psychiatric Review Technique ("PRT") Form]" or comply with the form's mode of analysis, which is generally called the "paragraph B"

criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a(a)). "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Id*. (citing 20 C.F.R. § 404.1520a(c)(3-4) ) (These are also the "B" criteria under the mental impairment listings that are evaluated at step three.) There are five possible ratings for the first three, and their range is: none, mild, moderate, marked, and extreme. For episodes of decompensation, the range, also in increasing severity, is: (a) none; (b) one to two; (c) three; and (d) four or more. § 404.1520a(b), (c). The ALJ must incorporate the results of the PRT into his findings and conclusions. *Id*. (citing 20 C.F.R. § 404.1520a(e)(2)).

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC), meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work. *Id.* If the claimant is successful at all four of the preceding steps, the burden shifts at step five to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

## II. Whether the ALJ Erred in Omitting Mental Restrictions in his RFC Assessment

Ms. Lee argues that the ALJ's decision should be overturned because the ALJ failed to explain why mental impairments he found credible at step two of the process were not taken into account in his RFC findings. ECF No. 19-1 at 2–7.

In his decision, the ALJ evaluated the medical records and found that Ms. Lee has the following medically determinable severe impairments that significantly limit her ability to perform basic work activities: obesity, degenerative changes of the lumbar and cervical spine, and osteoarthritis of the right knee and left hip. R. 19. He also included in his decision an evaluation of Ms. Lee's medically determinable mental impairments of anxiety disorder and depressive disorder. R. 19–22. In compliance with 20 CFR, Part 404, Subpart P, Appendix 1, the ALJ conducted the appropriate separate evaluations on a four-point scale to determine how Ms. Lee's anxiety disorder and depressive disorder impacts certain activities. *Id*. He concluded, based on a detailed review of the medical evidence and Ms. Lee's testimony concerning her mental impairments, that the evidence supported a finding that Ms. Lee has a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing herself. R. 21.

The ALJ went on to determine that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than

minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." *Id.* (emphasis in original) (citing 20 CFR 404.1520a(d)(1)).

Before turning to his RFC determination, the ALJ noted that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 22.

Ms. Lee does not raise issue with the ALJ's conclusion that her mental impairments caused only mild limitations and that "mild" limitations are typically considered non-severe. 20 CFR 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). Ms. Lee argues instead that the ALJ was still required to consider her mild limitations, although "non-severe," when evaluating her RFC and presenting hypothetical situations to the vocational expert at the hearing. ECF No. 19-1 at 4. I agree and find that the ALJ made a legal error in not expressly considering Ms. Lee's mental impairment in determining her RFC or otherwise implicitly accounting for them in hypotheticals posed to the VE.

Ms. Lee cites several cases to support her position. In *Nolen v. Berryhill*, the Court reversed the ALJ's decision for a similarly-lacking analysis as the one in this case. No. 4:16-cv-00153, 2017 WL 3575822 (S. D. Ind. July 26, 2017). At step two, the ALJ utilized the appropriate "PRT analysis" and assigned the claimant's mental impairment a rating of "mild" in the first three categories and "none" in episodes of decompensation. *Id.* at *4. Much like in this case, the ALJ then concluded that

"[b]ased on his evaluation of the evidence and his findings that [the claimant]'s mental impairment caused only mild limitations in the first three functional areas and had not resulted in any episodes of decompensation . . . [the claimant]'s mental impairment was non-severe." *Id*. When evaluating the claimant's RFC, the ALJ did not expressly consider her mental impairment despite his finding that she suffered from other severe physical impairments. The Court ultimately held the ALJ's lack of analysis to be a legal error warranting remand:

> Substantial evidence supports the ALJ's determination that [claimant]'s mental impairment (based on complaints of depression and anxiety) is non-severe. But because [the claimant] did suffer from other severe impairments (including seizure disorder, supraventricular tachycardia, and migraine headaches), the ALJ was required expressly to evaluate whether her non-severe mental impairment imposes any functional restrictions requiring accommodation within the RFC.
>
> When a claimant has at least one severe impairment (as Ms. Nolen does), she is entitled to have the ALJ evaluate whether the combination of her non-severe and severe impairments impose any functional limitations. The ALJ cannot merely conclude from non-severity that no limitations are necessary. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987) (emphasizing duty of Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

*Id*. at 4–5. (citing *McGill v Colvin*, No. 1:14-cv-0399-SEB-MJD, 2015 WL 224779, at *11 (S.D. Ind. Jan. 13, 2015) (finding remand appropriate where the ALJ failed to include any discussion of the plaintiff's non-severe mental impairments in the RFC analysis) ("By neglecting to include any discussion of Plaintiff's mental impairments in the RFC analysis, the ALJ ... plainly did not provide 'a more detailed' analysis of

these impairments than he did at step 2, such that he failed to comply with SSR 96-8p.")).

In addition to *Nolen*, Ms. Lee cited to multiple cases from various districts with similar holdings. *See* ECF No. 19-1 at 5 (citing *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. 2016); *Solomon v. Comm'r of Soc. Sec.*, 376 F. Supp. 3d 1012 (D. Az. 2019); *Richardson v. Saul*, 2021 WL 37705 (E.D. Ky. 2021); *Lydon v. Comm'r of Soc. Sec.*, 2019 WL 3812379 (D. Col. 2019); *Vicky R. v. Saul*, 2021 WL 536297 (D. Minn. 2021); *Berutti v. Saul*, 2021 WL 1499313 (W.D. Mo. 2021)). Of particular relevance is the Court's holding in *Kich*. There, the court overturned the ALJ's findings where "[h]aving found mild limitations in [social functioning and concentration, persistence, or pace], [the ALJ] did not provide any explanation as to why he excluded any related limitations in the RFC . . .." *Kich*, F. Supp. 3d at 359.

The Commissioner did not address the cases cited by Ms. Lee and instead argues that the ALJ appropriately and fully considered Ms. Lee's diagnoses of depression and anxiety and was not obligated to address them in his RFC analysis because he had already determined them to be non-severe. ECF No. 20 at 5–7. A non-severe impairment, the Commissioner argues, is one that does not significantly limit a person's physical or mental ability to do basic work activities, and thus need not be considered in an RFC analysis. *Id.* at 7. The Court specifically addressed this argument in *Nolen*:

> The SSA has been clear that the evaluation of whether a mental impairment is severe is an exercise **separate** from an evaluation of whether a claimant has functional limitations stemming from even a

> non-severe mental impairment, assuming that the claimant otherwise suffers from a severe impairment. See 20 C.F.R. § 404.1545(a)(2) ('We will consider all of your medically determinable impairments ... including your medically determinable impairments that are not 'severe' ... when we assess your residual functional capacity'); SSR 96-8p ('The adjudicator must remember that the limitations identified in the 'paragraph B' ... and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 .... The mental RFC assessment used at steps 4 and 5 ... requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C....').

*Nolen*, 2017 WL 3575822 at *5 (emphasis added). In other words, a finding that mental impairment is mild and thus non-severe at step two, does not obviate the need for a separate analysis of that mental impairment's effect on RFC when the claimant has other severe impairments.

The ALJ found that Ms. Lee suffers from severe impairments of obesity, degenerative changes in the lumbar and cervical spine, and osteoarthritis of the right knee and left hip. R. 19. Accordingly, Ms. Lee is entitled to have the ALJ evaluate whether the combination of her severe and non-severe impairments impose any functional limitations.

I also find that the ALJ erred by omitting the mental limitations from the hypotheticals posed to the vocational expert. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the ALJ determined at step two that the claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace, but failed to discuss in his RFC finding whether medical evidence suggested that the claimant's ability to work was affected by his mental limitation. *Id.* at 1181. The Eleventh Circuit reversed on those grounds and specifically noted that the ALJ

could have implicitly accounted for the limitations in the hypotheticals posed to the vocational expert. *Id*.

> [O]ther circuits have held that hypothetical questions [posed to the vocational expert] adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

*Id*. at 1180–81. But in *Winschel*, the ALJ did not account for any mental limitations in his hypotheticals to the vocational expert and his failure to do so in combination with his failure to explicitly account for the mental limitations in his RFC analysis was reversible error. *Id*. at 1181 ("Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant]'s impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that [the claimant] could perform significant numbers of jobs in the national economy."). The same is true in this case.

Additionally, I do not find the ALJ's failure to address her mental limitations in the RFC analysis to be harmless error. "An error is harmless when 'it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record.'" *McGill*, 2015 WL 224779, at *11 (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Of course, the fact that the ALJ rated Ms. Lee's mental impairments as "mild" in the categories of (1) understanding, remembering, or applying information; (2) interacting with others, concentrating persisting, or maintaining pace, and (3) adapting or managing oneself, does not mean that the the ALJ *must* include mental functioning limitations in the RFC findings. But, they must at least be discussed or considered in some way. "The point is that when mental impairments are not severe, they still must be evaluated for purposes of steps four and five." *Nolen*, 2017 WL 3575822 at *6. Whether Ms. Lee's mild mental limitations imposed any functional limitations on her ability to work is especially relevant when, as here, the ALJ ultimately found that she was capable of performing past relevant work as a hair stylist because it does not require the performance of work-related activities precluded by her RFC. R. 27–28. *See Kich*, 218 F. Supp. 3d at 356–57.

Accordingly, it is recommended that the District Court GRANT Ms. Lee's Motion for Summary Judgment on these grounds.[4]

### III. Whether the Appointment of Andrew Saul Violates Separation of Powers and Renders the ALJ's Decision Constitutionally Defective

Ms. Lee asserts a constitutional challenge to the Social Security Commissioner's authority based on Supreme Court case *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (Jun. 20, 2020). ECF No. 19-1 at 8. In *Seila Law*, the Supreme Court found that the structure of the Consumer Financial Protection Bureau ("CFPB") violated

[4] Although I recommend that Ms. Lee's Motion for Summary Judgment be granted for the reasons stated in Section II, in the interest of providing the District Court with a thorough analysis of the issues, I will also address Ms. Lee's second argument in support of reversal.

the separation of powers. *Id.* at 2191. The Court ultimately held that, in light of the President's "ultimate responsibility" for use of the executive power and "active obligation to supervise" the officers to whom he has delegated authority, limitations on the President's ability to remove the Director of the CFPB thwarts that responsibility. *Id.* at 2203–04 ("The CFPB Director's insulation from removal by an accountable President . . . render[s] the agency's structure unconstitutional."). More recently, the Supreme Court cemented its findings as to the President's removal powers in *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). There, the Court held that a similar statutory provision protecting the Director of the Federal Housing Finance Authority ("FHFA") from removal except for cause was a violation of the separation of powers. *Id.* at 1783.

In *Collins*, the Court also held that in challenging a statutory removal restriction, a plaintiff need not show that the claimed injury is traceable to the challenged provision of law to show standing. *Id.* at 1779. Instead, it is sufficient for a plaintiff to allege injury based on the "allegedly unlawful conduct of the defendant." *Id.* In order to obtain retrospective relief, however, a plaintiff must show that the unconstitutional provision in question "inflict[ed] compensable harm." *Id.* at 1789. The Court opined that an example of such harm could be if, for example, the President attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal, or if the President publicly stated displeasure with the Director and that he would remove the Director if not for the statute. *Id.* at 1788–89. Ultimately, the Court remanded the case for resolution

of that very question: whether the provision had inflicted compensable harm on plaintiffs. *Id.* at 1789.

Applying the holdings in *Seila Law* and *Collins* to the Commissioner of Social Security, and in keeping with holdings in districts throughout the country, I agree with Ms. Lee that the provision for removal of the Commissioner, 41 U.S.C. § 902(a)(3), "suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*" and therefore violates the separation of powers. *See Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357, 2021 WL 6334838, at *3 (M.D. Fla. Nov. 23, 2021). *See also Tosland v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 WL 5356721, at *3 (W.D. Wash. Nov. 17, 2021) (finding that 41 U.S.C. § 902(a)(3) violates separation of powers; *Young v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (finding same); *Tafoya v. Kijakazi*, No. 21-CV-00871-REB, 2021 WL 3269640, at *3 (D. Colo. July 29, 2021). However, to warrant retrospective relief such as remand, Ms. Lee must show that the removal restriction inflicted compensable harm on her. *Collins*, 141 S. Ct. at 1789.

The Commissioner argues that Ms. Lee has not shown that the removal restriction actually caused him harm for two reasons: (1) the ALJ who issued the final decision denying Ms. Lee's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction; the ALJ had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time (ECF No. 20 at 10–12), and (2) Ms. Lee cannot show

that Section 902(a)(3)'s removal restriction inflicted compensable harm on her (*Id*. at 12–16).

*Ratification of the ALJ's Appointment*

Ms. Lee does not dispute the Commissioner's claim that "the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time." *Id*. at 8–9. Instead, Ms. Lee argues that the Commissioner's argument avoids addressing the basis of her challenge to "the delegation of authority under which [the adjudicators] adjudicated and then decided this case." ECF No. 23 at 3. I disagree. In *Perez-Kocher*, Magistrate Judge Kidd ruled in favor of the Commissioner on the same argument raised here:

> In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." *Collins*, 141 S. Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. As such, the Acting Commissioner's appointment was constitutional. *See id*. at 1782 ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure") (finding that the Recovery Act's removal statute does not extend to an Acting Director). Thus, Acting Commissioner Nancy Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Nancy Berryhill would make that appointment constitutional. *Boger v. Kijakazi*, No. 1:20-cv-331, 2021 WL 5023141, at *n.4 (W.D.N.C. Oct. 28, 2021) (unpublished) ("Indeed, [the p]laintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the] ALJ [in question] was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").

2021 WL 6334838, at *6. Here, like in *Perez-Kocher*, the ALJ's appointment was ratified by the Acting Commissioner of Social Security. "Therefore, even if the ALJ was appointed by Commissioner Saul, that appointment was later ratified by the Acting Commissioner, who was not subject to the unconstitutional structure. Therefore, the ALJ's appointment, as ratified, is valid." *Id*. It follows that Section 902(a)(3) did not affect Ms. Lee's case, thus eliminating any nexus between the removal restriction and the alleged harm. For that reason alone, and in keeping with the requirements for remand outlined in *Collins*, I find that Ms. Lee's constitutional claim fails.

*Compensable harm*

The Commissioner further argues that under *Collins*, Ms. Lee "cannot show that the removal restriction 'inflict[ed] compensable harm' on him." ECF No. 20 at 12. The Commissioner is correct in its argument. Ms. Lee has not sufficiently alleged that then-Commissioner Saul's unconstitutional appointment and tenure resulted in compensable harm. Ms. Lee argues that she suffered not merely the denial of her disability claim, but also that (1) she did not receive the constitutionally valid adjudication process from the SSA's Appeals Council to which she was entitled, and (2) she did not receive the constitutionally valid determination by the Appeals Council to which shew as entitled. ECF No. 23 at 4.

Magistrate Judge Lammens addressed an identical argument regarding compensable harm from the plaintiff in *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-

122-PRL, 2022 WL 252464, at *4 (M.D. Fla. Jan. 26, 2022), and I agree with his reasoning and conclusion. There, the plaintiff's alleged injuries were as follows:

- She did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled.
- She did not receive a constitutionally valid decision from an ALJ to which she was entitled.
- She received an unfavorable decision from this constitutionally illicit ALJ adjudication process.
- **She did not receive a constitutionally valid process from the SSA's Appeals Council to which she was entitled.**
- **She did not receive a constitutionally valid determination by the Appeals Council to which she was entitled.**

*Id*. (emphasis added). Judge Lammens found the alleged specific injuries to be insufficient:

> However, in addition to not being pled in the complaint, Plaintiff's contentions regarding her purported injuries are conclusory. She must set forth facts showing plausible harm as a result of the Commissioner's statutory removal protections. In this instance, following the examples set forth in *Collins*, there are no allegations to suggest an effort by the President to remove the Acting Commissioner that were rebuffed by 42 U.S.C. § 902(a)(3). Because Plaintiff has not shown that she was injured by the removal protection provision she cannot demonstrate that the provision itself "inflict[ed] compensable harm" on her. *Collins*, 141 S. Ct. at 1789; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) ("[E]ven assuming arguendo that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.").
>
> This issue is not an issue of first impression. This Court and other district courts throughout the country have decided this issue in the same or similar context in recent months and have come to the same conclusion for the same reasons. In *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021), this Court found that, even assuming 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, "the removal provision does not necessitate remand or a rehearing of Plaintiff's claim." Similarly, in *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021), this Court found that,

> because the plaintiff could not establish that the tenure provision caused compensable harm, the plaintiff had failed to state a claim upon which relief could be granted.
>
> Further, in *Benavidez v. Kijakazi*, No. CV 20-990 SCY, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021), the court granted the Commissioner's motion to dismiss Plaintiff's constitutional challenge based on *Selia Law LLC*, finding that the plaintiff had not sufficiently alleged facts showing plausible harm caused by the removal provision. Similarly, in *Nathanial H. v. Kijakazi*, No. 6:19-CV-01280-AA, 2021 WL 5921377, at *6 (D. Or. Dec. 15, 2021), the court held that, even though the removal restriction of Section 902(a)(3) violated the separation of powers, it did not independently require reversal of the ALJ's decision. In reaching that conclusion, the court found that the removal restriction did not render the Acting Commissioner's appointment void or invalidate the Acting Commissioner's authority. *Id*. at *5. The court also rejected plaintiff's arguments (similar to Plaintiff's here) that he suffered various injuries, such as deprivation of his right to a constitutional decision, due to the unconstitutional nature of the removal restriction. *Id*. at *6.
>
> And in a recent case with similar facts to the instant case, *Helms v. Comm'r of Soc. Sec*., No. 3:20-CV-589-MOC, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021), the court granted the Commissioner's motion for summary judgment and determined that even if plaintiff had somehow been injured by the ALJ's decision, the ratification of the ALJ's appointment by Acting Commissioner Berryhill "adequately cured any such injury," noting that the Acting Commissioner was not protected from removal from office. The court also found that it was implausible that the Commissioner's protection from removal from office, "whether constitutional or not," could have affected the ALJ's decision. *Id*.
>
> Notably, Plaintiff has not cited a single case in which a court held that the removal restriction in Section 902(a)(3) requires reversal of an ALJ's decision. *See also Nathanial H. v. Kijakazi*, 2021 WL 5921377 at *6 n. 4 ("Plaintiff does not cite, nor has this court found, any decision from another court that has reached a different conclusion on the merits of a plaintiff's constitutional claim regarding section 902(a)(3).").

*Id*. at* 4–5.

As in *Vickery*, Ms. Lee has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure

protection affected the ALJ's decision or caused her compensable harm. The holding of *Collins*, as well as the above cited cases, leads me to recommend that the Court deny Ms. Lee's Motion for Summary Judgment on the grounds that her constitutional rights were violated.[5]

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment (ECF No. 19), **DENY** Defendant's Motion for Summary Judgment (ECF No. 20), and **REVERSE AND REMAND** the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

---

[5] To reinforce its position that Ms. Lee's constitutional rights were not violated by the removal restriction, the Commissioner also argues that the rehearing request should be denied under the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and due to "broad prudential considerations." ECF No. 15 at 16–20. However, because I find Ms. Lee's constitutional rights were not violated but rehearing is warranted on other, more compelling, grounds, I need not address the supplemental arguments made by the Commissioner.

**DONE AND SUBMITTED** in Chambers this 28th day of June, 2022, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE